*Western Dist.*
*October,* 1840.

WELLS
*vs.*
GORDON.

---

WELLS *vs.* GORDON.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, FOR THE PARISH OF RAPIDES, JUDGE KING OF THE FIFTH PRESIDING.

Where A. authorized B., against whom he had a judgment, to deliver his draft for its amount to the clerk of the court, and the latter gave his draft payable *to the order* of the clerk, who appropriated it to his own use: *Held*, that he should have made it payable to the order of A., for whom it was given, and not to have put it in the power of the clerk to use it, and that having done so, he *was still liable* to pay the amount of the judgment.

Where an injunction is perpetuated for a part of the sum enjoined, the party obtaining it, will not be liable to damages and costs, on its dissolution for the remainder.

This is an injunction case. Gordon, as the tutor, &c., of the minor heirs of J. L. Lecroix, deceased, obtained a judg-

ment against one William Justice, as principal, and T. J. Wells, the present plaintiff in injunction, for three hundred and seventy-five dollars, on their joint promissory note. Execution issued against the principal, returned "*no property found.*" A second execution issued in February, 1839, against Wells, and he obtained an injunction to stay it, on the ground that he had paid the judgment in his draft given to J. B. Scott, clerk of the court, who was authorized to receive it in payment. Gordon the defendant, and who had obtained the judgment, disavowed Scott's authority to take the draft in his own name. Before issuing the second execution, he wrote a letter to Wells, stating "that he had requested J. B. Scott, to say, that he would take his draft for the amount of the judgment, rather than issue an execution. But he informs me he has taken your draft payable to himself, at sixty days, which was wholly unauthorized by me;" and furthermore, he states, "that he has applied the draft to the payment of his own debts, which makes the matter still worse, so that I think it necessary to inform you, that the judgment still remains open against you." J. M. Wells, sworn, says that Gordon told witness he had authorized Scott to receive the draft of plaintiff, for *the amount* of his judgment, but instructed him not to take the draft in his name or to his order, but did not say in whose favor he had directed the draft to be drawn. It was shown, that Wells drew a draft for the amount of the judgment and interest, payable to Scott, who used it.

There was judgment perpetuating the injunction, and the defendant appealed.

*Hyams* and *Dunbar,* for the plaintiff.

*Ogden,* contra.

*Martin, J.,* delivered the opinion of the court.

The defendant, Gordon, is appellent from a judgment perpetuating an injunction, staying an execution which had issued on a judgment he had obtained against Wells, the present plaintiff.

The facts of the case are these. The appellant wrote to Wells, the appellee, that he had authorized J. B. Scott, clerk of the court in which judgment had been obtained, to receive the appellee's draft for the amount of the judgment, being unwilling to issue execution thereon. It is in evidence, that Gordon informed a third person he had authorized Scott to receive the draft for him. Scott took the draft, payable to himself, and appropriated it to his own use. On this the execution which was enjoined, as above stated, was issued.

It is contended that the execution improperly issued, because the judgment was discharged by the draft which Scott received. Gordon in his letter to Wells, which was written after Scott had appropriated the draft to his own use, states, that he had not authorized Scott to take the draft in his own name, and he made the same declaration to the person whom he informed that he had authorized Scott to receive the draft. It is further urged, that he cannot avail himself of this restriction, because it makes part of secret instructions which he gave to Scott, and which were not communicated to Wells. This is certainly true. There is no evidence of Scott's agency in Gordon's letter. He there informs Wells, that he would take a draft for the amount of his judgment, rather than issue execution against him. We must seek for the nature and character of Scott's powers in Gordon's verbal declaration, for there is no evidence of them elsewhere. This declaration is, that he had authorized Scott to receive the draft for the amount of the judgment. Had Wells given Scott a draft payable to Gordon, he would have acted in the manner which most persons in similar circumstances act; and also, in the safest manner for Gordon, and in the manner best calculated to secure himself, as the event of this suit will show. He would have avoided the necessity of a transfer from Scott to Gordon, rendered inconvenient to the former, on account of the liability under which it would place him, and the inconveniency which would result to the latter, if the draft became part of the estate of Scott, by his death. The draft being made to the order of Scott, exposed Gordon to the danger resulting from his infidelity, and we do

WESTERN DIST.
October, 1840.

WELLS
vs.
GORDON.

Where A. authorized B., against whom he had a judgment, to deliver his draft for its amount, to the clerk of the court and the latter gave his draft, payable *to the order* of the clerk, who appropriated it to his own use : *Held*, that he should have made it payable to the order of A., for whom it was given, and not to have put it in the power of the clerk to use it; and that he was *still liable* to pay the amount of the judgment.

not see that Wells could reasonably contemplate any advantage to Gordon or himself, in deviating from the ordinary course.

Wells had, therefore, offered a draft to Gordon, which was certainly to be made payable to Gordon himself, for Wells did not propose to give an endorser. Gordon evidently intended that this draft should be made payable to himself, for he could not expect that Scott should become an endorser. Scott in undertaking to receive the draft for Gordon, did not contract the obligation in such a manner as would bind him to endorse it. None of the parties before us, contemplated any other draft than one payable to Gordon. Wells, in giving a different draft from that contemplated, put it in the power of Scott to appropriate it to his own use. He must take the consequences of his own act.

Where an injunction is perpetuated for a part of the sum enjoined, the party obtaining it will not be liable to damages and costs, on its dissolution for the remainder.

The judgment on which the execution enjoined issued, provided, that Wells should recover his costs from Gordon. The execution, however, issued for the costs also, to wit: the sum of twenty-five dollars and seventy-five cents. As to this sum, the injunction was properly obtained, and ought to be perpetuated. This exempts Wells from the damages given by the act of the legislature passed in 1831, on the dissolution of the injunction, and leaves Gordon to his remedy on the bond; 11 *Louisiana Reports*, 483.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and the injunction made perpetual for the sum of twenty-five dollars and seventy-five cents; and that it be dissolved as to the rest, to wit, the sum of three hundred and twenty-five dollars and seventy-five cents, with ten per cent. interest thereon, from the 24th January, 1834, until paid, and for which execution may issue, the plaintiff and appellee paying the costs of the appeal; those in the court below, to be paid by the defendant and appellant.